UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONALD VANCE ABBOTT, | ) | CASE NO. 09-20282 (ASD) |
| | ) | |
| DEBTOR | ) | CHAPTER 7 |
| | ) | |
| LYNN MARCANTONIO, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | ADV. PRO. NO. 09-2033 |
| | ) | |
| RONALD VANCE ABBOTT, | ) | |
| | ) | |
| DEFENDANT | ) | RE: DOC. I.D. NO. 20 |

APPEARANCES:

Julie M. Strzemienski, Esq.  　　　　　　　　　　Counsel for Plaintiff
Hampton Law Offices LLC,
59 East Hill Rd.,
P.O. Box 1008,
Canton, CT 06019

Anthony S. Novak, Esq.  　　　　　　　　　　Counsel for Defendant - Debtor
Lobo & Novak, LLP,
280 Adams Street,
Manchester, CT 06042-1975

**MEMORANDUM OF DECISION AND ORDER
ON DEBTOR'S MOTION TO DISMISS COUNTS ONE, TWO AND SIX**

DABROWSKI, ALBERT S., Chief United States Bankruptcy Judge

## I.   BACKGROUND AND INTRODUCTION

Ronald Vance Abbott (hereafter, the "Debtor") commenced the captioned bankruptcy case on February 12, 2009, by filing a voluntary petition under Chapter 7 of the Bankruptcy Code.  Lynn Marcantonio (hereafter, the "Plaintiff"), the Debtor's ex-girlfriend, commenced the captioned adversary proceeding on May 11, 2009, by filing a nine-count complaint[1] against the Debtor.  Presently before the Court is the Debtor's <u>Motion to Dismiss</u> (hereafter, the "Motion"), Doc. I.D. No. 20, to dismiss Counts One (statutory theft), Two (conversion) and Six (RICO[2]) of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7012(b), for "failure to state a claim upon which relief can be granted."

For the reasons set forth hereinafter, the Motion is denied as to Counts One and Two, and granted as to Count Six.

## II.   JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§157(b)(2)(B),(I), and (J).

## III.   DISCUSSION

---

[1] The original complaint, Doc. I.D. No. 1, was amended by the <u>First Amended Complaint</u> (hereafter, the "Complaint"), Doc. I.D. No. 25, filed on August 3, 2009.  The Court construes the Motion to refer to such amended Complaint, which consisted of the same numbered counts as the original.

[2]   The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961, *et seq.*

2

### A.     *Standards for Rule 12(b)(6) Motions to Dismiss*

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he issue is not whether a plaintiff will ultimately prevail but whether [she] is entitled to offer evidence to support [her] claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974). The Supreme Court, discussing the plausibility standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007), recently adopted the following criteria, applicable to such motions:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal

3

conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).

### B.   *The Factual Allegations*

In accordance with the criteria set forth, supra, the Court, for purposes of the present Motion, accepts as true the following factual allegations of the Complaint:

- The Plaintiff and the Debtor were involved in a romantic relationship and cohabitated at the Debtor's residence (hereafter, the "Residence") from August 16, 2007 to August 2008.

- On or about October 29, 2007, the Plaintiff gave the Debtor a check in the amount of $41,700.00 to pay in full a second mortgage encumbering the Residence.

- The Plaintiff tendered the $41,700.00 based upon representations by the Debtor that he would spend his life with the Plaintiff, repay the money, and grant the Plaintiff an interest in the Residence.

- On or about January 14, 2008, the Plaintiff gave the Debtor a check in the amount of $75,000.00 to be used by the Debtor to purchase a business, Abbott Enterprises, LLC d/b/a/ Grumpy's Pub and Grub (hereafter, the "Business").

- The Plaintiff tendered the $75,000.00 to the Debtor based upon representations that he would repay the loan.

- On or about March 28, 2008, the Debtor terminated his relationship with the Plaintiff and subsequently commenced eviction proceedings against her.

- The Debtor has not returned the aforementioned money to the Plaintiff.

- The Plaintiff alleges, "upon information and belief," that the Debtor "had no intention

4

of repaying the funds to [the Plaintiff] or giving her an interest in the [Residence]." (Complaint ¶11.)

- The Debtor (and others), on or about August 19, 2008, removed from the Business location certain of its assets, including television sets, an industrial cooler, food, and liquor.

### C. *Conversion (Count Two) and Statutory Theft (Count One)*

In order to state a claim that is plausible, the Complaint must allege facts sufficient, either directly or by reasonable inference, to support each of the required elements of the underlying cause of action. "'[F]actual allegations must be enough to raise a right to relief above the speculative level,' and assert a cause of action 'with enough heft to show entitlement to relief . . . and enough facts to state a claim to relief that is plausible on its face.'" Hutchison v. CBRE Realty Finance, Inc., 638 F.Supp.2d 265, 270 (D.Conn. 2009) (quoting Twombly, 550 U.S. at 555, 570).

"The tort of conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights. Similarly, statutory theft under General Statutes § 52-564 is synonymous with larceny as provided in General Statutes § 53a-119." Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 43-44 (2000) (citations and internal quotation marks omitted). Conn. Gen. Stat. §53a-119 defines larceny, in pertinent part, as follows:

> A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:
> . . .
> (2) Obtaining property by false pretenses. A person obtains property by false

5

pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person.

(3) Obtaining property by false promise. A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and when he does not intend to engage in such conduct or does not believe that the third person intends to engage in such conduct. In any prosecution for larceny based upon a false promise, the defendant's intention or belief that the promise would not be performed may not be established by or inferred from the fact alone that such promise was not performed.

"Statutory theft, however, requires an element over and above what is necessary to prove conversion, namely, that the defendant intentionally deprived the complaining party of his or her property. Suarez-Negrete v. Trotta, 47 Conn.App. 517, 521, 705 A.2d 215 (1998). Nonetheless, to prevail on either claim, the party alleging conversion or statutory theft must prove a sufficient property interest in the items in question. See Falker v. Samperi, 190 Conn. 412, 419-20, 461 A.2d 681 (1983) (plaintiff's property rights are at heart of conversion, and proof of ownership is plaintiff's burden); Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 309, 635 A.2d 843 (1993) (prima facie case for conversion and statutory theft requires proof that property in question 'belonged to' plaintiff)." Mystic Color Lab, Inc. v. Auctions Worldwide, LLC, 284 Conn. 408, 419 (2007) (citations omitted); see, also Macomber v. Travelers Property and Cas. Corp., 261 Conn. 620, 650 (2002) ("plaintiff must establish legal ownership or right to possession in the particular thing . . . that the defendant is alleged to have converted.") (citations omitted).

The Plaintiff's allegations concerning transfers of televisions, an industrial cooler, food, and liquor clearly identified such items as "assets of Abbott Enterprises, LLC that were removed from the business location." (Complaint at 6.) Under the Connecticut statutes establishing limited liability companies, it is clear that while the Debtor's

6

membership interest in the Business was property of the Debtor, and consequently, of his estate, property of the Business is neither. Conn. Gen. Stat. §34-167, entitled Ownership of limited liability company property, states:

> (a) Property transferred to or otherwise acquired by a limited liability company is property of the limited liability company and not of the members individually. A member has no interest in specific limited liability company property.
>
> (b) Property may be acquired, held and conveyed in the name of the limited liability company. Any interest in real property may be acquired in the name of the limited liability company and title to any interest so acquired shall vest in the limited liability company itself rather than in the members individually.

Because the allegedly transferred assets were not property in which the Plaintiff had any ownership interest or right to possession, they cannot be the subject of a conversion or statutory theft claim brought by the Plaintiff.

Neither can the Plaintiff's claims for conversion or statutory theft be based *solely* upon allegations that the Debtor breached agreements to repay loans from the Plaintiff in the amounts of $41,700.00 and $75,000.00.

> Under our case law, money can clearly be subject to conversion. Similarly, money can be the subject of statutory theft. The plaintiffs must establish, however, legal ownership or right to possession of specifically identifiable moneys. . . . [A]n action for conversion of funds may not be maintained to satisfy a mere obligation to pay money. . . . It must be shown that the money claimed . . .belonged to the plaintiff and that the defendant converted it to his own use. Thus, the requirement that the money be identified as a specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally. . . . A mere obligation to pay money may not be enforced by a conversion action . . . and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied. Consistent with this rule, in our case law sustaining a cause of action wherein money was the subject of the conversion or theft, the plaintiffs in those cases at one time had possession of, or legal title to, the money.

Deming v. Nationwide Mut. Ins. Co., 279 Conn. 745, 771-72 (2006).

The question remains as to whether the Plaintiff has sufficiently alleged her claims for conversion and statutory theft in regard to the Debtor's obtaining from her the sums of $41,700.00 and $75,000.00  The Debtor, noting that the Plaintiff admits having tendered the subject funds to the Debtor, contends that the Plaintiff "has failed to plead that the subject monies were taken without her consent or knowledge; an essential element of larceny" or conversion.  (Debtor's Mem. at 3.)  As the Plaintiff notes in her responsive memorandum, however, the Debtor's argument overlooks the plain language of Conn. Gen. Stat. §53a-119, which specifically includes within the statutory definition of larceny obtaining property by false pretenses or false promises.  Consistent with such statutory language, the Plaintiff has alleged that the Debtor obtained the funds at issue by knowingly making false representations and promises, upon which she relied, to induce her to turn over to him the funds at issue.

Allegations that the Debtor subsequently failed to repay such funds may not be the sole grounds for a finding that, at the time he obtained the funds from the Plaintiff, the Debtor had the intent not to repay them.  See Conn. Gen. Stat. §53a-119(3).  Nor may allegations of conduct that is merely consistent with, but does not give rise to a plausible inference of, such intent suffice.  See Twombly, 550 U.S. at 545.  Although alleging that the funds at issue were fraudulently obtained is a far cry from being able to sustain the burden of proving such allegations,[3] the Court finds that the Complaint contains factual allegations - particularly, that the Debtor obtained the funds from the Plaintiff over a brief three-month period of time and only two months thereafter he terminated the relationship and began eviction proceedings against the Plaintiff - which, if true, could give rise to a

---

[3] Particularly under the " higher standard of proof by clear and convincing evidence to be entitled to an award of treble damages pursuant to § 52- 564" Stuart v. Stuart, 112 Conn.App. 160, 175 (Conn.App. 2009).

8

plausible inference that the Debtor obtained the funds at issue from the Plaintiff by false pretenses or false promises.

Thus, only insofar as they assert claims that the Debtor obtained the amounts of $41,700.00 and $75,000.00 by conversion or larceny by false pretenses or false promise, Counts One and Two of the Complaint are sufficient to state plausible claims for relief.

### D.    *RICO (Count Six)*

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as "criminal RICO." In so doing, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)-(c) (1976). Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden- i.e., invoking RICO's civil remedies of treble damages, attorneys fees and costs. See Bays v. Hunter Savings Association, 539 F.Supp. 1020, 1023 (S.D.Ohio 1982). To satisfy this latter burden, plaintiff must allege that he was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1976) (emphasis added).

Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 -18 (2d Cir. 1983).

### *i.    "Racketeering Activity" Requirement*

A RICO claim requires two or more predicate acts of "racketeering activity," defined in 18 U.S.C. §1961(1), which states, in relevant part:

> As used in this chapter–
> (1) "racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code. . . (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title),. . . .

9

Robbery is among the state-law crimes included in RICO's definition of racketeering activities. Connecticut's Penal Code defines robbery, in relevant part, as follows:

> A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person . . . .

Conn. Gen. Stat. 53a-133.

The Plaintiff alleges that the Debtor, by making false promises, wrongfully obtained from her the sums of $41,700.00 and $75,000.00. Even if the Complaint is sufficient to state a claim for statutory theft, and thus larceny, it does not allege the use or threat of force. Although robbery may constitute a predicate act of racketeering activity under RICO, larceny alone does not. See Wood v. Incorporated Village of Patchogue of New York, 311 F.Supp.2d 344, 358 (E.D.N.Y. 2004) (under similar definition of robbery); United States v. Gonzalez, 21 F.3d 1045, 1047 (11th Cir. 1994) (same).

Nor do the allegations concerning the Business' transfers of certain of its assets sufficiently allege a predicate act of racketeering activity. The Plaintiff contends that such transfers "constitute bankruptcy fraud under 18 U.S.C. §152." (Complaint at 5.) Section 152, however, concerns the transfer or concealment of property of the Debtor or his bankruptcy estate. As discussed, supra, Part III, C, the property allegedly transferred was not property of the Debtor (and, hence, did not become property of the Debtor's bankruptcy estate). A transfer of assets of the Business, a limited liability company which was not a debtor under the Bankruptcy Code, does not come within the purview of a bankruptcy fraud.

### ii. *"Pattern" Requirement*

Not only are the allegations of the Complaint insufficient to establish two predicate

10

acts of racketeering activity, neither would they sustain the requirement of a "pattern" of such activity.

> A plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time). To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed.. . .
>
> Here, the nature of [the debtor's] alleged scheme to defraud [his] creditors does not imply a threat of continued criminal activity. Unlike, for example, organized crime, [the debtor's] alleged bankruptcy fraud was inherently terminable. Once [the debtor] had fraudulently conveyed his assets, which he allegedly accomplished by [the Petition Date] when he filed for bankruptcy, the scheme essentially came to its conclusion. Thus, . . . it defies logic to suggest that a threat of continued looting activity exists when, . . . there is nothing left to loot.
> . . .
> A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time. Notably,[the Second Circuit Court of Appeals] has never found a closed-ended pattern where the predicate acts spanned fewer than two years.

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159, 180 -182 (2d Cir. 2004) (citations and internal quotation marks omitted). All of the acts alleged in the Complaint occurred between October 29, 2007 and August 19, 2008, a period of less than one year. Accordingly, the Plaintiffs have not alleged facts sufficient to establish a pattern, as required by RICO.

## IV.    CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that the Complaint pleads and contains allegations of fact that allow a reasonable and plausible inference that the Debtor is liable for the conduct alleged in Counts One (statutory theft) and/or Two (conversion), but not in Count Six (RICO), in accordance with which:

11

**IT IS HEREBY ORDERED** that the Motion is **DENIED** as to Counts One and Two, and **GRANTED** as to Count Six.

Count Six of the Complaint is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: December 21, 2009                                                BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge